| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| UNITED STATES, | |
| Plaintiff, | |
| – against – | **MEMORANDUM & ORDER** |
| QUAIMME DAVIES, | 17-CR-57 (ERK) |
| Defendant. | |

KORMAN, *J.*:

## BACKGROUND

The undisputed facts, taken from the U.S. Attorney's letter of April 28, 2020, provide the backdrop for my ruling on Mr. Davies's motion for compassionate release. On January 28, 2017, Davies and Edson Altino ("Altino") robbed at gunpoint a branch of JPMorgan Chase Bank, N.A. (the "Chase Bank") located at 176-70 Union Turnpike in Flushing, New York. PSR ¶ 4. Davies and Altino demanded access to the bank vault, while Davies brandished a firearm loaded with hollow point bullets. *See id.*. A bank employee activated a silent alarm, which notified the New York City Police Department ("NYPD") that a robbery was in progress. *Id*. Davies forced three employees to enter the vault. He emptied the vault of the cash, and placed the stolen cash in a bag. *Id*. Altino brought a fourth employee into the vault and bound two employees' hands with zip ties. *Id*.

Davies then demanded additional money and took that money from a teller window cash drawer opened by a victim employee. PSR ¶ 5. Davies demanded access to the ATM. *Id*. When employees initially denied having the codes to the ATM machines, Davies responded, "don't make this personal," and he threatened to check the employees' wallets for their licenses and home

1

addresses. The employees entered their codes into the ATM machines. When Davies opened the door of an ATM machine, he activated an audible alarm. *Id*.

By this time, NYPD officers, who had responded to the initial silent alarm, were in the lobby of the Chase Bank. PSR ¶ 6. A standoff ensued. The responding NYPD officers could see Davies had a firearm in his hand and told him to drop his weapon. Davies responded, in sum and substance, "You drop the gun!" According to one of the victim employees, Altino then suggested, in sum and substance, that he and the Davies take one of the employees as a hostage and forced one of the victim employees to stand up. However, Davies replied, in sum and substance, that there were "too many cops," or "too many of them to take on."

One of the defendants unloaded the firearm and tossed the magazine and firearm in the direction of the officers. *Id*. Davies and Altino were then taken into custody by the NYPD. Id. Two bags containing the stolen proceeds were recovered in the lobby of the Chase Bank, adjacent to the door to the teller area; Davies and Altino had stolen $133,794 in cash. *Id*. ¶ 7. This armed bank robbery was not the Davies's first firearms-related conviction. In 1999, he was found in possession of a loaded 9mm pistol and sentenced to 18 months in prison. PSR ¶ 33.

On April 21, 2017, Davies pleaded guilty to Counts One and Two of the above-captioned indictment. Count One charged bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d). (PSR ¶ 1). Count Two charged that Davies brandished a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). *Id*. ¶ 2. On September 27, 2017, Davies was sentenced by Judge Weinstein to one year of imprisonment on Count One and seven years' imprisonment on Count Two, to run consecutively to the sentence imposed on Count 1. ECF No. 67. This sentence was significantly less than the sentence that could have been imposed. Specifically, the guidelines range on Count 1 was 51 to 62 months. PSR ¶ 65. And the sentence for

Count 2, the brandishing of a firearm, mandated a seven-year sentence to run consecutive to the sentence imposed on Count 1.

## ANALYSIS

On April 24, 2020, after serving three years and three months of his eight-year sentence for the serious crime of violence, which his able lawyer describes as "abhorrent," Davies moved for compassionate because he suffers from moderate asthma and is incarcerated at the FCI Fort Dix, where he suggests the conditions may significantly increase his risk of developing COVID-19. This argument rests on the premise that asthma is a co-morbidity factor for COVID-19. While empirical data collected and compiled by New York State suggests that asthma is not among the top 10 leading co-morbidity factors for COVID-19,[1] Davies has suggested that there are confounding factors (to use a term from the field of epidemiology) that cast doubt on the validity of that empirical data. On this record, I do not have the sufficient expertise to make a judgment regarding the validity these confounding factors. Thus I do not rely on the data compiled by New York State.

Nevertheless, there is empirical evidence that is not altogether insignificant. The first relates to Mr. Davies's age, 38, of which no mention is made in his motion papers. Of New York's 20,828 COVID-19 fatalities as of May 8, 1.4% (287) were patients between 30-39 years of age. Second, while Davies's counsel, relying on BOP's COVID-19 homepage, describes the less than optimum conditions at FCI Fort Dix, DE 126 at 4-5, he fails to acknowledge that the same BOP report he points to indicates that there have been no deaths at that facility from COVID-19.

---

[1] New York State Department of Health, COVID-19 Fatality Data, *available at* https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n.

Passing over these considerations, I agree with Chief Judge McMahon that a "court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." *United States v. Gotti*, 2020 WL 497987, at *2 (S.D.N.Y. Jan. 15, 2020) (citing U.S.S.G. § 1B1.13).

Title 18 U.S.C. 3553(a) provides in relevant part, that a sentence should be sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant. 18 U.S.C.A. § 3553 (West). Davies's request for compassionate release would effectively result in a sentence of a little more than three years and three months. This, for an "abhorrent" and violent crime which terrorized four Chase Bank employees—all of whom were required at gunpoint to comply with the demands of Davies and Altino, and one of whom was held hostage when the police arrived. Such a sentence would make a mockery of the considerations enumerated in 18 U.S.C. 3553(a). It would not come close to reflecting the seriousness of the offense, or providing just punishment for the offense. Moreover, rather than promoting respect for the law and its deterrent effect, it would undermine it. Finally, the nature of the offense, not to speak of Davies's prior conviction for possession of a loaded 9mm pistol, does not provide confidence that his release would protect the public from further harms.

## CONCLUSION

The defendant's motion for compassionate release is denied.

SO ORDERED.

*Edward R. Korman*
Edward R. Korman
United States District Judge

Brooklyn, New York
May 8, 2020